PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2602
_____

UNITED STATES OF AMERICA

v.

RICHIE FONTAINE,
                            Appellant
_____

On Appeal from the District Court of the
Virgin Islands
(D.C. No. 09-cr-00050-001)
District Judge:  Hon. Curtis V. Gomez
_____

Argued
May 7, 2012

Before:  CHAGARES, JORDAN, and COWEN, *Circuit
Judges*.

(Filed:  August 28, 2012)
_____

James Bernier, Jr.
Michael Fitzsimmons   [ARGUED]
Duensing, Casner, Dollison & Fitzsimmons
5060 Forts Straede
Electra House
St. Thomas, VI   00802

     *Counsel for Appellant*

Nelson L. Jones   [ARGUED]
Office of United States Attorney
5500 Veterans Bldg. – Suite 260
Charlotte Amalie, St. Thomas, VI 00802

     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Richie Fontaine appeals his conviction in the District Court of the Virgin Islands of the United States for unauthorized possession of a firearm or "imitation thereof" during the commission of a crime of violence, in violation of 14 V.I. Code Ann. tit. 14, § 2253(a).  Fontaine argues that § 2253(a) is void for vagueness and that the government failed to prove he was not authorized to possess an "imitation" firearm, which, under his interpretation of § 2253(a), it was required to do.  For the following reasons, we will affirm the judgment of conviction.

## I. Background

### A. *Facts*

On the night of August 14, 2009, Yully Geron and Julio Martinez were driving in St. Thomas, when Fontaine and an unidentified companion[1] forced them to stop and get out of their car. Fontaine was brandishing what appeared to be a black handgun, while his companion had what appeared to be a silver handgun. After Geron and Martinez got out of the car, Fontaine and his accomplice ordered them to lie on the ground. Fontaine's accomplice proceeded to search Martinez and took his wallet, jewelry, and cell phone, while Fontaine searched Geron and took his wallet and a steel bracelet. Fontaine then held his gun – or what appeared to be a gun – to Martinez's head, and asked him "[w]here is the money." (Joint App. at 180.) Making the threat explicit, Fontaine said, "I am going to count until three. And if you don't give me your money, I'm going to kill you." (*Id.*) At some point, Fontaine pulled the trigger, but the gun did not fire. Fontaine also demanded money from Geron. Martinez told Fontaine that Fontaine's accomplice, who had by then walked across the street, had the money. Fontaine then departed. Martinez and Geron immediately drove to a police station and reported the incident. Fontaine was arrested nine days later. Law enforcement authorities never recovered the gun (real or imitation) that was in Fontaine's possession when he robbed Martinez and Geron.

---

[1] The police never located Fontaine's accomplice, and his identity is unknown.

B.   *Procedural History*

On October 1, 2009, the government charged Fontaine with, among other things, six counts of unauthorized possession of a firearm or "imitation thereof" during the commission of a crime of violence, in violation of 14 V.I. Code Ann. tit. 14, § 2253(a).[2]   Because law enforcement authorities did not recover a gun when they apprehended Fontaine and so could not prove that he had possessed an operable firearm, the government's theory of the case was that Fontaine possessed an "imitation" firearm when he committed the crimes for which he was being prosecuted.

---

[2] Section 2253(a) provides:

Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five years and shall be fined not less than $5,000 nor more than $15,000 or both the fine and imprisonment, except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States, or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence, as defined in subsection (d) hereof, then such person shall be fined $25,000 and imprisoned

not less than fifteen (15) years nor more than twenty (20) years. The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence.

14 V.I. Code Ann. tit. 14, § 2253(a).

The details of the indictment are as follows. Count One charged Fontaine with receipt of a firearm by a person under indictment, in violation of 18 U.S.C. § 922(n). Counts Two and Eight charged him with first degree robbery, in violation of 14 V.I. Code Ann. tit. 14, §§ 1861, 1862(2), and 11(a). Counts Four and Ten charged Fontaine with second degree robbery, in violation of 14 V.I. Code Ann. tit. 14, §§ 1861 and 1863(1). Counts Six and Twelve charged Fontaine with first degree assault, in violation of 14 V.I. Code Ann. tit. 14, §§ 295(3) and 11(a). The statute at issue here figures in Counts Three, Five, Seven, Nine, Eleven, and Thirteen, which charged Fontaine with unauthorized possession of a firearm or "imitation thereof" during the commission of a crime of violence, in violation of 14 V.I. Code Ann. tit. 14, §§ 2253(a) and 11(a), in connection with each of the aforementioned offenses. Count Three charged Fontaine with violating § 2253 in connection with the first degree robbery of Geron charged in Count Two. Count Five charged Fontaine with violating § 2253(a) in connection with the second degree robbery of Geron charged in Count Four. Count Seven charged Fontaine with violating § 2253(a) in connection with the conduct that gave rise to Count Six, which alleges that Fontaine assaulted Geron with the intent to commit robbery. Count Nine charges Fontaine with violating

5

Trial commenced on November 16, 2009. At the close of the government's case-in-chief, Fontaine filed a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.[3] The District Court initially denied the motion but then became "concerned that the counts that charge the possession of a firearm during a crime of violence may have an elemental proof issue." (Joint App. at 311.) The Court

§ 2253(a) in connection with the first degree robbery of Martinez charged in Count Eight. Count Eleven charges Fontaine with violating § 2253(a) in connection with the second degree robbery of Martinez charged in Count Ten. Count Thirteen charges Fontaine with violating § 2253(a) in connection with the conduct that gave rise to Count Twelve, which alleges that Fontaine assaulted Martinez with the intent to commit robbery.

[3] Federal Rule of Criminal Procedure 29(a) provides:

After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

Fed. R. Crim. P. 29(a).

was apparently concerned that § 2253(a), as written, required the government to prove that the defendant did not have authorization to possess an imitation firearm. (*See id.* at 320 ("And the way the statute is written, or the way it's been determined to be … you have to show that there was no license to possess [an imitation firearm]."); *id.* ("If you can't get a license to possess a toy gun, say one you got at Kmart that looks like a real gun, can you really establish that [element of the offense]?").) The Court thus instructed the parties to submit additional briefing on the issue.

Before definitively resolving that issue, the District Court instructed the jury that, for the government to sustain its burden of proving that Fontaine was guilty of unauthorized possession of a firearm or imitation thereof during a crime of violence,

> the government must prove the following essential elements beyond a reasonable doubt: [f]irst, that the defendant committed a crime of violence; [s]econd, that during the commission of that crime the defendant knowingly possessed or carried a firearm, or imitation thereof; [and] [t]hird, that the defendant was not authorized to possess or carry the firearm or imitation thereof.

(*Id.* at 345.) Based on that instruction, the jury found Fontaine guilty on five of the six counts charging a violation of § 2253(a).[4]

---

[4] The jury returned a verdict of not guilty on Count Seven.

7

Thereafter, the Court denied Fontaine's Rule 29 motion. In denying the motion, it held "that the language [of § 2253] is clear enough to put those in the community on notice [as to] which crimes are penalized, [and] what type of conduct is prohibited." (*Id.* at 474.) The Court also held that, except to the extent of showing a defendant was a convicted felon, § 2253(a) did not require the government to show that Fontaine was not authorized to possess a firearm or "imitation thereof" in order to prove that he was guilty of "possessing … an imitation firearm during the commission of a crime of violence."[5] V.I. Code Ann. tit. 14, § 2253(a). Fontaine was

---

[5] In reaching that post-trial conclusion, the Court adopted the reading of § 2253(a) proposed by the government in its brief. (*See* Joint App. at 474-75 (stating that "the reading … the Government outlined in its papers is the one that the Court will adopt in this case").) The government paraphrased § 2253(a) as follows:

> Whoever has posses [sic], bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant.

> [The person] shall be sentenced to imprisonment of not less than one year nor more than five years and shall be fined not less than $5,000 nor more than $15,000 or both the fine and imprisonment.

> [Additionally,] if [the] person [was] convicted of a felony in any state, territory, or federal court of the United States, or if [a] firearm or imitation thereof was had, possessed, borne,

8

> transported or carried by or under the proximate control of [a convicted felon] during the commission or attempted commission of a crime of violence, then [the convicted felon] shall be fined $25,000 and imprisoned not less than fifteen (15) years nor more than twenty (20) years.
>
> The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence.

(*Id.* at 107-08.) Thus, while it is not entirely clear, it appears that, under the District Court's and the government's interpretation of the statute, the government could show a defendant was a convicted felon but would not otherwise have to prove beyond a reasonable doubt that a defendant accused of possessing an imitation firearm in the course of a violent crime was not authorized to possess a firearm or an imitation firearm. In other words, to the extent the universe of persons "not otherwise authorized by law" to carry a firearm contains non-felons, *cf.* V.I. Code Ann. tit. 23, § 454 (providing that "[a] firearm may be lawfully had, possessed, borne, transported or carried in the Virgin Islands by the following persons, provided a license for such purpose has been issued by the Commissioner in accordance with the provisions of this chapter ... ."), it seems the government and the District Court would not require proof of a lack of authorization as to those individuals.

9

subsequently sentenced to sixty months' imprisonment on Count One; fifteen years' imprisonment on Counts Three, Five, Nine, Eleven, and Thirteen; and fifteen years' imprisonment on Counts Eight, Ten, and Twelve. All counts were to be served concurrently. This timely appeal followed.

## II. Discussion[6]

Fontaine appeals his conviction on two grounds: first, he argues that his conviction under § 2253(a) is unconstitutional because the statute is unconstitutionally vague; second, he argues that the government failed to satisfy its burden of proving that he is guilty of violating § 2253(a) because it did not offer any evidence that he is

---

That interpretation is at odds with the instructions that the Court gave to the jury. In particular, as noted above, the Court instructed the jury that the government bore the burden of proving that "the defendant was not authorized to possess or carry [a] firearm or imitation thereof." (*Id.* at 345.) Despite any inconsistency, however, there appears to be no dispute that the government offered evidence that Fontaine did not have authorization to possess a firearm. (*See* Appellees' Br. at 14 (noting that "evidence was produced that Fontaine did not possess a firearm license"); Appellant's Br. at 9 (asking whether government could demonstrate that Fontaine did not have authorization to carry an imitation firearm "by establishing that he did not possess a firearms license.").)

[6] The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612. We have jurisdiction pursuant to 28 U.S.C. § 1291.

not authorized to possess an imitation firearm. We will uphold the conviction because § 2253(a) clearly proscribes Fontaine's conduct in this case, and because, sensibly read, it requires only that the government prove that an accused is not authorized to possess a firearm, not that it prove a lack of authorization to carry an imitation firearm.

A.    *The Void-For-Vagueness Challenge*[7]

As previously noted, *supra* note 2, Section 2253(a) provides:

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code,[8] loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five years and shall be fined not less than $5,000 nor more

---

[7] We review "challenges to the constitutionality of a statute under a *de novo* standard of review." *United States v. Fullmer*, 584 F.3d 132, 151 (3d Cir. 2009) (citation omitted).

[8] V.I. Code Ann. tit. 23, § 451(d) defines a firearm as "any device by whatever name known, capable of discharging ammunition by means of gas generated from an explosive composition, including any air gas or spring gun or any 'BB' pistols or 'BB' guns that have been adapted or modified to discharge projectiles as a firearm."

than $15,000 or both the fine and imprisonment, *except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States, or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence*, as defined in subsection (d) hereof, then such person shall be fined $25,000 and imprisoned not less than fifteen (15) years nor more than twenty (20) years. The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence.

(emphasis added). And again, as noted, the jury found Fontaine guilty of possessing a firearm or imitation firearm "during the commission or attempted commission of a crime of violence … ." V.I. Code Ann. tit. 14, § 2253(a). Fontaine contends that § 2253(a) is void for vagueness because, by penalizing those who possess an imitation firearm during a crime of violence, it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits and authorizes," and "encourages arbitrary and discriminatory enforcement." (Appellant's Br. at 7, 8.) We disagree.

The void-for-vagueness doctrine reflects the fundamental principle that, in order to comply with the requirements of due process, a statute must give fair warning

12

of the conduct that it prohibits. *See Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) ("We have recognized … that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law … ." (internal quotation marks and citation omitted)). A statute is unconstitutionally vague under the Due Process Clause if it "(1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). "In criminal cases, because vagueness attacks are based on lack of notice, they may be overcome in any specific case where reasonable persons would know their conduct puts [them] at risk of punishment under the statute." *United States v. Moyer*, 674 F.3d 192, 211 (3d Cir. 2012) (internal quotation marks and citation omitted). Where, as here, a statute does not involve rights guaranteed by the First Amendment,[9] we examine whether it is vague "as-applied to the affected party." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009); *see also United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment

---

[9] In the context of a case arising under the First Amendment, "we are concerned with the vagueness of the statute 'on its face' because such vagueness may in itself deter constitutionally protected and socially desirable conduct." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 36 (1963) (citation omitted).

13

freedoms must be examined in the light of the facts of the case at hand." (citation omitted)).

Fontaine's void-for-vagueness challenge fails because § 2253(a) is abundantly clear as applied to his conduct in this case. As previously described, the statute prohibits the possession of an imitation firearm during the commission of a crime of violence. V.I. Code Ann. tit. 14, § 2253(a). Although it does not define the term "imitation," the plain and ordinary meaning of that term is "something produced as a copy," and it shares the same Latin root as the verb "imitate," which means "to be or appear like."[10] *Webster's Collegiate Dictionary*, 10th ed. (2002). Thus, § 2253(a) imposes punishment on anyone who, while committing or attempting

---

[10] In determining whether a statute is unconstitutionally vague, we apply the canons of statutory construction. *See, e.g., United States v. Thomas*, 932 F.2d 1085, 1090 (5th Cir. 1991) (applying "fundamental" canon of construction "that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" in assessing vagueness challenge (internal quotation marks and citation omitted)); *Vernon Beigay, Inc. v. Traxler*, 790 F.2d 1088, 1093 (4th Cir. 1986) (same). Thus, where a statutory term "is not defined in the statute, we must construe the term 'in accordance with its ordinary or natural meaning.'" *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994) (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)); *Williams v. Taylor*, 529 U.S. 420, 431 (2000) ("We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." (internal quotation marks and citations omitted)).

to commit a crime of violence, possesses an object that is "produced as a copy" of, or "appear[s] like," a firearm. During the trial, both Martinez and Geron testified that Fontaine brandished a black object they recognized as a gun when he robbed them. In fact, Fontaine held it to Martinez's head and pulled the trigger. There is no question that a person of ordinary intelligence would have fair warning that an object that appears to be a handgun is an "imitation" firearm under § 2253(a), and that using it to threaten murder during a robbery violates the law. Therefore, because a person of ordinary intelligence would understand that the statute proscribes Fontaine's conduct in this case, it is not unconstitutionally vague.[11]

---

[11] We also reject in short order Fontaine's argument that § 2253(a) encourages arbitrary and discriminatory enforcement because "if a thief carried a green, plastic water pistol while stealing $101 from a victim, section 2253 authorizes his prosecution … ." (Appellant's Br. at 9.) As already noted, a statute is unconstitutionally vague if it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement," *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999), by failing to "establish minimal guidelines to govern law enforcement," *Kolender v. Lawson*, 461 U.S. 352, 368 (1983) (citation omitted). Section 2253(a) does provide adequate "guidelines to govern enforcement." It expressly allows territorial authorities to prosecute a person only when that person commits a crime of violence while possessing an object that is a copy of, or appears to be, a firearm. The fact that a thief who carries something that looks like a real firearm while committing a crime of violence falls within the statute's sweep does not mean that the statute

15

B.    *The Demand for Proof of Unauthorized Possession of an Imitation Firearm*[12]

Fontaine also argues that, even if we determine that § 2253(a) is not unconstitutionally vague, we should reverse his conviction because, under that statute, the government had the burden of proving that he was not authorized to possess an imitation firearm, and it failed to do so.  He is, however, mistaken in his premise about the meaning of § 2253(a).

"A court's primary purpose in statutory interpretation is to discern legislative intent."  *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006).  In determining legislative intent, "[t]he plain meaning of legislation should be conclusive, except in … rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (internal quotation marks and

---

encourages enforcement against people who have something which, like a green water pistol, is obviously not a firearm.

[12] We exercise plenary review of a district court's interpretation of a statute.  *Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998).  Because Fontaine's appeal requires us to interpret a territorial law, it is our role to predict how the Supreme Court of the Virgin Islands would resolve this interpretive issue.  *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 n.3 (3d Cir. 2007) (stating that, with the establishment of the Supreme Court of the Virgin Islands, federal courts are now tasked with "predict[ing] how the Supreme Court of the Virgin Islands would decide an issue of territorial law").

citation omitted). In those rare cases, we are obligated "to construe statutes sensibly and avoid constructions which yield absurd or unjust results." *United States v. McKie*, 112 F.3d 626, 631 (3d Cir. 1997); *see also In re Chapman*, 166 U.S. 661, 667 (1897) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion."). Thus, as we explained in *Government of the Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir. 1979), when necessary, "[g]eneral terms should be so limited in their application as not to lead to … an absurd consequence," and we should "presume[] that the legislature intended exceptions to its language, which would avoid [absurd]" results. *Id.* at 225 (quoting *United States v. Kirby*, 74 U.S. 482, 486-87 (1868)); *see, e.g., United States v. Carson*, 455 F.3d 336, 385 n.44 (D.C. Cir. 2006) (reaching "common sense conclusion" that, despite the language of the statute, the violent crimes in aid of racketeering statute "[did] not permit a fine to be levied in lieu of imprisonment or death"); *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.*, 401 F.3d 274, 280 (4th Cir. 2005) (declining to adopt interpretation of federal statute that "once a water association is granted authority to serve *some* area—no matter how small—it could then expand its monopoly indefinitely by simply developing the physical capability to serve locations beyond its original franchise area"); *Coar v. Kazimir*, 990 F.2d 1413, 1423-24 (3d Cir. 1993) (rejecting interpretation of Employee Retirement Income Security Act that would permit "dishonest trustees … 'who repeatedly and indeed blatantly breached their fiduciary duties to … pension plan' to evade their obligations," and result in "[p]lan members and their families [having] to watch their pension monies disappear into the [dishonest trustees'] pockets" (quoting *Crawford v.*

17

*La Boucherie Bernard Ltd.*, 815 F.2d 117, 121 (D.C. Cir. 1987)). An interpretation is absurd when it "defies rationality," *Landstar Exp. Am. v. Fed. Maritime Comm'n*, 569 F.3d 493, 498 (D.C. Cir. 2009), or renders the statute "nonsensical and superfluous," *Corley v. United States*, 556 U.S. 303, 314 (2009); *see* John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2390 (2003) (noting that "standard interpretive doctrine ... defines an 'absurd result' as an outcome so contrary to perceived social values that Congress could not have 'intended' it").

We hold that § 2253(a) does not require the government to prove that Fontaine lacked authorization to carry an imitation firearm, because, first, we do not think the language of the statute necessarily leads to such a requirement, and, second, to hold otherwise would require us to adopt an interpretation of the statute that yields a patently "absurd … result[]." *McKie*, 112 F.3d at 631.

As to the first point, although § 2253(a) is not a model of clarity, it appears that, in enacting the provision, the Virgin Islands legislature sought, among other things, to prohibit a person who is not authorized to possess firearms from possessing even an imitation of a firearm during the commission of a crime of violence. That much emerges from the wording of the statute, which limits its application to those who are not authorized to possess firearms and which then goes on to provide that whoever fits that qualification and nevertheless possesses a "firearm" (as that term is defined in V.I. Code Ann. tit. 23, § 451(d)) or an "imitation thereof" (*i.e.*, an object that appears to be a firearm) during the commission of a crime of violence has committed an offense punishable by a $25,000 fine and a fifteen-year term of

18

imprisonment. The most reasonable interpretation of § 2253(a) is not one that requires proof that a perpetrator lacks authorization to carry an imitation firearm, but rather one that requires proof of a lack of authorization to carry any "firearm," as that term is statutorily defined. More specifically, the first clause of the statute – which makes it an offense for a person to, "[u]nless otherwise authorized by law, ha[ve], possess[], [or] bear[]" a firearm – does not mention the term "imitation thereof." V.I. Code Ann. tit. 14, § 2253(a). It speaks solely to authorization to carry a firearm. It is thus the lack of authorization to have a firearm that stands as a prerequisite to criminal liability for possessing an imitation firearm in the course of a violent crime. Once that circumstance is shown, the possession of an imitation firearm, as much as a real one, in the course of a violent crime becomes punishable under the statute.[13]

---

[13] The Dissent sees things differently. It says that "there is no grammatical reason to distinguish between the two objects [firearm and imitation firearm] that might justify requiring authorization for the possession of one but not the other." (Dissent at 4-5.) The view of our dissenting colleague is that the phrase "unless otherwise authorized" in the first clause of the statute "describes the statute's subject, 'whoever.'" (*Id.* at 4.) He goes on to say that "'[w]however[,]' is … understood as someone unauthorized." (*Id.*) He then says that the first clause of the statute prohibits the statute's subject ("someone unauthorized") from possessing a firearm, and that the third clause of the statute prohibits the statute's subject from having, possessing, or bearing, a "firearm or an imitation thereof." (*Id.*) Thus, he concludes, the government must prove that the defendant is not authorized to possess an imitation firearm in order to

19

prove that the defendant is guilty of possessing an imitation firearm during the commission of a crime of violence. The short answer to that reading, however, is that the legislature "did not write the statute that way." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks omitted). As noted above, the first clause of the statute speaks of authorization to have a firearm, and makes no mention of the term "imitation thereof." V.I. Code Ann. tit. 14, § 2253(a).

Our dissenting colleague also argues that our interpretation of § 2253(a) is in tension with *United States v. Xavier*, 2 F.3d 1281 (3d Cir. 2003). He says that "in *Xavier*, we held that simple possession requires one to knowingly possess a firearm without authorization to possess and is a lesser included offense of possession during a crime of violence," (Dissent at 5), and that "[f]or the Majority's holding to be understood as consistent with *Xavier* so that 'each provision [does not] require[] proof of a fact which the other does not,' the statute would criminalize simple possession of an imitation firearm," (*id.* at 6 (quoting *Xavier*, 2 F.3d at 1291)). We cannot agree with that interpretation. First, as a matter of logic, the outlawing of one thing does not necessarily require the outlawing of another. It simply does not follow that outlawing the possession of an imitation firearm during the course of a violent crime means that mere possession of an imitation firearm must be illegal. Second, in *Xavier*, we suggested that the clause prohibiting possession of a firearm during the commission of a crime of violence is a "separate crime[], directed at a separate evil[]" than the clause prohibiting unlawful possession of a firearm generally. *See Xavier*, 2 F.3d at 1292 n.12 (noting that clause in § 2253(a) which "provid[es] heavier penalties for [a defendant] who

20

In short, the Virgin Islands legislature intended to prohibit a person who is not authorized to carry a firearm from: (1) possessing a firearm; (2) possessing a firearm during the commission of a crime of violence; and (3) possessing an imitation firearm during the commission of a crime of violence. It is entirely understandable that the legislature would choose to punish the possession of both actual and imitation firearms in the course of violent crime, and to do so with reference to the territorial gun laws requiring authorization to have a firearm. Real guns can of course cause injury and death, but possessing even a fake gun during a violent crime can have serious consequences, including causing the victims to fear for their lives, as Fontaine's murderous threats in this case amply demonstrate.

As to the second point, even if a literal reading of the statute did demand the construction that Fontaine gives § 2253(a), we would reject that reading because it leads to an absurd result. There is no statute or regulation in the Virgin Islands that requires an individual to obtain authorization or licensure to possess an imitation firearm, so demanding proof of compliance with a regulatory regime that does not exist is

uses or carries an unregistered firearm during the commission … of a crime of violence" is a "separate crime, directed at [a] separate evil[]" than the crime of unlawful possession of a firearm (citation and internal quotation marks omitted)). Thus, we disagree with the Dissent's argument that, under *Xavier*, any interpretation of § 2253(a) that outlaws possession of an imitation firearm during the commission of a crime of violence – a crime that is separate and distinct from possession a firearm generally – must also criminalize possession of an imitation firearm.

to demand an impossibility. That dilemma is not resolved by leaning on the possibility that such a regime will be put in place. It is hard to imagine that the Virgin Islands – or any other state or territory for that matter – would take that step, and Fontaine does not suggest they will. Put simply, it "defies rationality" to believe that the Virgin Islands legislature contemplated a new program for licensing fake firearms – even realistic ones – and for turning Toys "R" Us and Kmart into regulated dealers of cap guns.[14] We decline

---

[14] Our dissenting colleague misinterprets, we believe, our precedent regarding statutory interpretation. He says that "instead of taking the first – and, in this case what should be the last – step of analyzing the statute's plain language, the Majority reasons that the legislature intended to prohibit only those persons not authorized to possess firearms from possessing even an imitation of a firearm during the commission of a crime of violence." (Dissent at 1-2 (citation and internal quotation marks omitted).) While the Dissent correctly notes that the "first step" "in all statutory construction cases," (*id.* at 1), is "to determine whether the language at issue has a plain and unambiguous meaning," (*id.* (citation and internal quotation marks omitted)), there is a reason why we take that step in the first instance: it is to "discern [the legislature's] intent," *Morgan*, 466 F.3d at 277. Thus, if we take the first step and determine that the "literal application of a statute will produce a result obviously at odds with the intentions of its drafters," *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989), it is our duty to adopt an interpretation of the statute that does not clearly contravene the legislature's intent, if such an interpretation is reasonably possible. *See In re* Chapman, 166 U.S. at 667 ("[N]othing is better settled than that statutes should receive a

to adopt Fontaine's reading of § 2253(a), and instead choose to construe the statute as requiring only proof that the defendant lacks authorization to possess a firearm, rather than

sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion.").

But, says our colleague, this is not like a "'rare case' warranting invocation of the 'absurd results' doctrine." (Dissent at 7 (quoting *Ron Pair Enters., Inc.*, 489 U.S. at 242-43).) He observes that "there is no legislative history contradicting the plain language construction [of § 2253(a)] or jurisprudential shift away from that construction, [or] any error in drafting [that can] be characterized as a 'typographical error' … ." (Dissent at 8.) Again, we are not persuaded that the statute requires proof of a lack of authorization to possess an imitation firearm. But, even if that were the most natural construction, we have never said that the doctrine of avoiding absurd results applies only when "there is no legislative history contradicting the plain language construction" of a statute, or there is a "jurisprudential shift away from that construction," or the statute contains what can fairly be characterized as a "typographical error." (*Id.*) We have not had to consider every circumstance in which the literal reading of a statute may end up being "absurd," but we believe that a statute that creates an analytical impossibility would meet that definition and would require us to consider whether a sensible alternative reading is possible.

requiring proof of a lack of authorization to possess an imitation firearm.[15]

Fontaine relies heavily on our decision in *United States v. Daniel*, 518 F.3d 205 (3d Cir. 2008) to support his statutory interpretation. Specifically, he contends that because "there is no procedure by which a person may obtain authorization to possess an imitation firearm[, we] should reverse [his] Section 2253(a) conviction using the same reasoning [we] employed when [we] reversed the conviction for unauthorized possession of ammunition in *Daniel*." (Reply Br. at 4.) But his reliance on *Daniel* is misplaced.

---

[15] In interpreting the statute in this way, we part company with the District Court, which, as we have noted, *supra*, n.5, seemed to accept when ruling on Fontaine's post-trial Rule 29 motion that the ban on possessing imitation firearms in the course of a violent crime may require proof of a lack of authorization to possess firearms only when the offender is a convicted felon. Despite what it said in its Rule 29 decision, however, the District Court did instruct the jury that one of the elements the government had to prove to sustain the § 2253(a) charges against Fontaine is that the defendant was not authorized to carry a firearm or an imitation thereof. (Joint App. at 345.) Since § 2253(a) does not require the government to prove that a defendant is not authorized to possess an imitation firearm, it would have been preferable for the District Court's instruction to omit the "imitation thereof" phrase. However, to the extent that the District Court's instruction was erroneous, any such error was harmless because the evidence introduced at trial showed that Fontaine did not have authorization to possess a firearm when he committed the robbery for which he was convicted.

In *Daniel*, the defendant was convicted of unlawfully possessing ammunition, in violation of V.I. Code Ann. tit. 14, § 2256. Section 2256 provided that "[a]ny person, who unless authorized by law, possesses, purchases, manufactures, advertises for sale or uses any firearm ammunition shall be guilty of a felony." *Daniel*, 518 F.3d at 207-08 (quoting V.I. Code Ann. tit. 14, § 2256). At the time *Daniel* was decided,[16] Virgin Islands law "[did] not establish a licensing requirement for ammunition … [n]or [did] it provide any specific procedure by which possession of ammunition [could] be licensed or otherwise authorized," *id.* at 208, but the law did "prohibit a dealer in firearms or ammunition from selling ammunition to anyone without a firearms license," *id.* (citation omitted). The government argued that, because a firearms dealer could not lawfully sell ammunition to anyone who did not possess a firearms license, possession of ammunition could only be lawful if one first obtained a firearms license. Since the defendant did not have a firearms license, the government claimed he could not lawfully – under § 2256 – possess ammunition. *Id.*

We rejected the government's argument based on our determination that there was "no basis for combining the offense of unlawful possession of ammunition … with the

---

[16] The statute at issue in *Daniel*, V.I. Code Ann. tit. 14, § 2256, has since been amended to more precisely define the prohibition on unauthorized possession, sale, advertisement for sale, purchase, use, or manufacture of ammunition.

firearm licensing provisions," because "neither [the unauthorized possession of ammunition statute], nor any other statutory provision of which we [were] aware, ma[de] lawful possession of ammunition contingent on having a firearms license." *Id.* at 209. Similarly, we held that the provision prohibiting a dealer from selling ammunition to anyone without a firearms license did not alter our conclusion because "[w]e [could] envision ways to acquire ammunition other than from a dealer." *Id.* Ultimately, we held that by showing that the defendant was not licensed to possess a firearm, the government did not prove beyond a reasonable doubt that the defendant's possession of ammunition was unlawful. *Id.* at 206. We thus reversed the defendant's conviction. *Id.* at 209.

*Daniel* is distinguishable from this case in at least three material ways. First, as a threshold matter, it involved an interpretative problem that is different than the one at issue here. In *Daniel*, the authorization requirement in the statute related to a regulatory regime that did not then exist (*i.e.*, the generalized regulation of ammunition), and we held that the government could not fix that legislative drafting error by roaming about in the Virgin Islands Code looking for another regulatory regime (*i.e.*, the regulation of firearms) to make sense of the "authorized by law" requirement. But *Daniel* is inapposite here because there is no need to reach beyond the applicable statute to understand or justify the authorization requirement we are called to interpret. The requirement that one be authorized by law to possess a firearm – which relates to a well-established regulatory regime under Virgin Islands law – is in the statute itself. Both the provision limiting the statute to those who are authorized to possess a firearm and the prohibition on possession of an imitation firearm in the

course of a violent crime appear together in the same statutory provision that Fontaine was convicted of violating.

Second, the disputed criminal statute in *Daniel* was fairly susceptible to only one interpretation. As previously noted, at the time *Daniel* was decided, V.I. Code Ann. tit. 14, § 2256 provided that "[a]ny person, who unless authorized by law, possesses … any firearm ammunition shall be guilty of a felony." *Daniel*, 518 F.3d at 207-08. The only plausible reading of that statute was that the government had to prove that the accused possessed ammunition without authority to do so. Here, by contrast, we are faced with a statute that is susceptible to two different interpretations. Section 2253(a) says that "[w]hoever, unless otherwise authorized by law, … possesses … any firearm, as defined in Title 23, section 451(d) of this code, … may be arrested without a warrant" and shall be fined and imprisoned, but it goes on to say "that … if such firearm or an imitation thereof was … possessed … during the commission or attempted commission of a crime of violence," the violator is subject to more severe punishment. V.I. Code Ann. tit. 14, § 2253(a). It is possible to read that language, as Fontaine does, as requiring the government to prove that someone accused of possessing an imitation firearm during a crime of violence is not "authorized by law" to do so. But the more reasonable textual interpretation, as already discussed, is that the authorization requirement refers to authorization to possess a firearm, not an imitation firearm.

Third, even though, at the time *Daniel* was decided, no Virgin Islands law required people to obtain authorization to possess ammunition, we did not face the same kind of absurd outcome Fontaine argues for here. The only available interpretation of the statute at issue in *Daniel*, § 2256, was not

27

necessarily nonsensical because, even though Virgin Islands law did not then directly regulate the possession of ammunition, it did regulate the sale of it by firearms dealers. Thus, it did not "def[y] rationality," *Landstar*, 569 F.3d at 498, to allow that the legislature might move to directly regulate possession. Indeed, when the Virgin Islands legislature enacted § 2256, there were already numerous state and federal laws governing the possession of ammunition. *See, e.g.,* 18 U.S.C. § 922(d), (g) (1968) (prohibiting the possession of ammunition by persons who, among other things, are (1) under indictment for a crime punishable by more than 1 year of imprisonment, (2) unlawful users of a controlled substance, or (3) illegal aliens); *see generally* Ill. Rev. Stat. ch. 38, § 24-3.1 (regulating possession of ammunition); Mass. Gen. Laws ch. 140, § 129C(1) (1973) (same). By contrast, Fontaine has pointed to no law that requires licensure of an imitation firearm; we are not aware of any such law; and we are hard-pressed to imagine that any is in the offing.

We thus reject Fontaine's challenge to his conviction based on the assertion that the government failed to prove that he was not authorized to possess an imitation firearm. *See Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1099 (8th Cir. 2001) ("When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law." (quoting *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000))); *United States v. Alaniz*, 235 F.3d 386, 389 (8th Cir. 2000) (acknowledging "duty to give an ambiguous statute a sensible construction"); *Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1185 (9th Cir. 1998) ("We should not choose a construction of ambiguous statutory language that

would attribute irrationality to Congress, where the words also lend themselves to a sensible construction.").

## III.    Conclusion

In sum, we hold that § 2253(a) is not void for vagueness because it puts a person of ordinary intelligence on notice that it prohibits Fontaine's conduct in this case. In addition, we hold that, to prove a defendant guilty of possessing an imitation firearm "during the commission or attempted commission of a crime of violence," V.I. Code Ann. tit. 14, § 2253(a), the government must show that the defendant lacks authorization to possess a firearm but need not show that the defendant lacks authorization to possess an imitation firearm. Accordingly, we will affirm Fontaine's conviction and sentence.

*United States v. Fontaine,* No. 11-2602, dissenting in part and in the judgment.

COWEN, *Circuit Judge*.

I join the majority opinion regarding whether 14 V.I.C. § 2253(a) is unconstitutionally vague. (Maj. Op. 11-15.) I respectfully dissent, however, with regard to the Majority's disposition of the other issues raised by the defendant. The unambiguous plain language of 14 V.I.C. § 2253(a) requires the government to prove beyond a reasonable doubt that the defendant was unauthorized to possess an imitation firearm and evidence that the defendant did not have a license to possess a firearm did not meet the government's burden of proof on this issue. As a result, I would reverse the judgment of the District Court.

### (a) Authorization to Possess an Imitation Firearm

"The first step" "in all statutory construction cases" is "'to determine whether the language at issue has a plain and unambiguous meaning.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997)). "'When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."'" *Barnhardt*, 534 U.S. at 462 (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-254 (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)) (citations omitted)).

The language of 14 V.I.C. § 2253(a) is unambiguous and susceptible to only one interpretation. But instead of taking the first—and, in this case what should be the last—

step of analyzing the statute's plain language, the Majority reasons that the legislature intended to prohibit only those persons "not authorized to possess firearms from possessing even an imitation of a firearm during the commission of a crime of violence." (Maj. Op. 18.)  Notably, there is no evidence of this legislative intent on which the Majority's conclusion is premised; indeed, it is as likely that that the legislature intended to criminalize brandishing an imitation firearm during the commission of a violence crime without reference to whether an individual is authorized to possess an actual firearm. Nevertheless, in an effort to realize this purported legislative intent, and to avoid what they characterize as an "absurd result" at odds with it, the Majority reads the statute as requiring proof of "lack of authorization to have a firearm . . . [for] criminal liability for possessing an imitation firearm in the course of a violent crime." (Maj. Op. 19.)  The Majority attempts to ground their conclusion in the statutory language, stating that the unauthorization element appears in the first clause of the statute and the term "imitation thereof" does not.  Therefore, according to the Majority, the statute can be interpreted as requiring proof that someone is unauthorized to possess a firearm when possessing an imitation during the commission of a violent crime.

The Majority's construction ignores the plain language grammatical structure of the statute.  The statute does not state "Whoever, unless otherwise authorized by law **to have, possess, bear . . . a firearm**, has possesses, bears . . . ."  Had it so stated, the Majority's reading might be a legitimate plain language construction.  In drafting the statute, however, the legislature chose not to link the authorization requirement

2

with possession of a firearm specifically. Title 14, Section 2253(a) of the Virgin Islands Code, provides as follows:

> **Whoever, unless otherwise authorized by law, has, possesses**, bears, transports or carries either, actually or constructively, openly or concealed **any firearm**, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five years and shall be fined not less than $5,000 nor more than $15,000 or both the fine and imprisonment, **except that if such person** shall have been convicted of a felony in any state, territory, or federal court of the United States, **or if such firearm or an imitation thereof** was **had, possessed, borne**, transported or carried by or under the proximate control of **such person** during the commission or attempted commission of a crime of violence, as defined in subsection (d) hereof, then such person shall be fined $25,000 and imprisoned not less than fifteen (15) years nor more than twenty

(20) years. The foregoing
applicable penalties provided for
violation of this section shall be in
addition to the penalty provided
for the commission of, or attempt
to commit, the felony or crime of
violence.

14 V.I.C. § 2253(a) (emphasis added).  "Unless otherwise authorized*"* is a modifying phrase set apart by commas and does not refer to that which must be authorized.  Under a plain language construction, that which must be authorized is understood in the context of the conduct targeted by the particular clause.  In the first clause, the conduct that must be unauthorized for criminal liability is possession of a firearm; in the third clause, the relevant clause here, the conduct is possession of a firearm or imitation thereof.

"Unless otherwise authorized" describes the statute's subject, "whoever."  The word "unless" denotes an exception to the subject contemplated by "whoever." "Whoever" is therefore understood as someone unauthorized.  The third clause refers to "such person," the statute's subject, or "whoever."  Substituting the understanding of "whoever" as someone unauthorized, the relevant statutory clause would read "or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of **someone unauthorized [to have/possess/bear  it]** during the commission or attempted commission of a crime of violence . . . ."  Unlike in the first clause, which is limited to the possession of firearms, in the third clause, the objects of  "ha[ve], possess[], [bear] . . . "are a "firearm and an imitation thereof."  And there is no

4

grammatical reason to distinguish between the two objects that might justify requiring authorization for the possession of one but not the other. Because the requirement that the government prove the individual was unauthorized attaches to the subject of the statute and is in reference to the targeted conduct in the particular subsection, the plain language statutory construction unambiguously requires the government to show that the person was unauthorized to possess a firearm or imitation thereof. *Accord United States v. McKie*, 112 F.3d 626, 629 (3d Cir. 1997) (it is the government's burden to prove that defendants were unauthorized to carry or possess); *Government of Virgin Islands v. Bedford,* 671 F.2d 758, 763 n. 7 (3d Cir.1982) (approving a jury instruction that § 2253(a) is violated if, "the defendant possessed the firearm; ... he was not licensed [authorized] to possess it; and ... it meets the definition ... of a firearm.").

Moreover, our prior analysis of the language of 14 V.I.C. § 2253(a), albeit in the context of a Double Jeopardy challenge, is instructive. *United States v. Xavier*, 2 F.3d 1281, 1290-91 (3d Cir. 1993). In *Xavier*, we held that simple possession requires one to knowingly possess a firearm without authorization to possess and is a lesser included offense of possession during a crime of violence; the Double Jeopardy Clause, therefore, prevented imposing separate sentences for possession and possession during the commission of a violent crime. We stated that "[c]onviction for possession during a crime of violence under § 2253(a) requires proof of three elements: one must 1) knowingly possess a firearm 2) without authorization 3) during a crime of violence." *Xavier*, 2 F.3d at 1291. The statute was meant to mandate minimum and maximum sentences for simple

5

unauthorized possession, "except that if" certain additional circumstances were present, a greater sentence is mandated. *Xavier*, 2 F.3d at 1291. In reaching this conclusion, we did not parse the phrase "or if such firearm or an imitation thereof was had . . .," and, as already stated, there is no structural or grammatical reason to distinguish within it. In accord with *Xavier*, when an imitation firearm is at issue, the statute would require that "one must 1) knowingly possess [an imitation] firearm 2) without authorization 3) during a crime of violence."

As we decided in *Xavier*, the plain language of 14 V.I.C. § 2253(a) establishes that possession during a crime of violence contains elements that simple possession does not contain, but the reverse is not true. All of the elements for the crime of simple possession are included in possession during a crime of violence. For the Majority's holding to be understood as consistent with *Xavier* so that "'each provision [does not] require[] proof of a fact which the other does not,'" *Id*. at 1291 (quoting with alterations *Blockberger v. United States*, 284 U.S. 299, 304 (1932)), the statute would criminalize simple possession of an imitation firearm. Like the possession of a firearm in *Xavier*, possession of an imitation firearm would be the lesser included offense of possession during a violent crime. Considering that the term "imitation firearm" is without limitation, the Majority's holding, when viewed in conjunction with our precedent, criminalizes the simple possession of a toy pistol—a truly "absurd result." There is nothing that would suggest that the Virgin Islands legislature intended the statute sweep so broadly. And, in response to the defendant's Constitutional vagueness challenge, the government argues the opposite. Of course, "the outlawing of one thing does not necessarily

6

require the outlawing of another" (Maj. Op. n. 13), but an interpretation of the Majority's holding that criminalizes only the type of conduct at issue in this case—and excludes criminalization of simple possession of an imitation firearm—undermines our holding in *Xavier* by imposing a construction in which "each provision requires proof of a fact which the other does not." Criminalizing behavior and prescribing punishments are strictly within the purview of the legislature. Here, the Majority usurps that role and simultaneously undermines our precedent.

Because I conclude that the statutory language is plain and unambiguous, I do not agree with the Majority that this case requires employing alternate tools of statutory interpretation. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242-43 (1989). But, even conceding that 14 V.I.C. § 2253(a)'s plain language construction leads to an unusual result of requiring the government to prove an element that might be impossible to prove, I do not agree that this is a "rare case" warranting invocation of the "absurd results" doctrine. *Ron Pair Enters., Inc.*, 489 U.S. at 242-43 ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result *demonstrably* at odds with the intentions of its drafters.'") (alteration in original) (emphasis added).

The cases from our Circuit cited by the Majority illustrate the type of "rare case" in which we have disregarded the unambiguous plain language construction of the statute. For example, in *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006), we concluded that the statute contained a typographical error; instead of "not less than 7 days" the statute should have stated "not more than 7 days" to appeal a

7

remand order. In so limiting the time for an appeal, we relied on the fact that the plain language reading of the statute was directly contrary to the legislative history. And in *Government of the Virgin Islands v. Berry*, 604 F.2d 221, 225-26 (3d Cir. 1979), we limited liability under a kidnapping statute by requiring that violations of the statute be analyzed with reference to four factors because potential liability was limitless under the literal meaning of the statutory language. We stated that this was consistent with "the modern approach [] to construe the kidnapping statutes so as 'to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal'" and warranted in light of the mandatory life sentence and the absence of legislative history to the contrary.[1]

Neither of these cases is analogous to the result of a plain language construction of 14 V.I.C. § 2253(a). Here, there is no legislative history contradicting the plain language construction or jurisprudential shift away from that construction, any error in drafting cannot be characterized as a "typographical error," and the interpretation urged by the Majority expands the scope of the conduct targeted by the

---

[1] The additional case from our Circuit cited by the majority is *Coar v. Kazimir*, 990 F.2d 1413, 1419-20 (3d Cir. 1993). *Coar* is inapplicable in resolving the issues before us because it did not address whether an unambiguous plain language construction of the statute should be abandoned. We reconciled one section of ERISA with another seemingly inconsistent section by finding a reading "consistent with the purposes of the entire statute considered as a whole." (citations omitted).

statute and enhances the sentence, as opposed to limiting it. Indeed, in *United States v. Daniel*, 518 F.3d 205, 208 (3d Cir. 2008), the precise result of 14 V.I.C. § 2253(a), which the Majority believes "creates an analytical impossibility," (Maj. Op. n. 14) was not so "absurd" as to require us to read the unauthorized element out of the statute. Further, each of the results of the Majority's holding highlighted above is as "absurd" as requiring the government to prove an element of a sentence enhancement statute. Under the guise of avoiding an "absurd result" the Majority invites others by ignoring the statute's sentence enhancement purpose, criminalizing behavior not addressed by the Virgin Islands Code, and violating basic canons of statutory construction.

### (b) Sufficient Proof of Unauthorization

In concluding that the government was required to prove that the defendant was unauthorized to possess an imitation firearm, I next address whether the government met its burden. Because I conclude that evidence that the defendant was unauthorized to possess a firearm is not sufficient, I would reverse the District Court's judgment.

We have interpreted "unless authorized by law" to mean "possession without a license." *Daniel*, 518 F.3d at 208; *McKie*, 112 F.3d at 630. Here, however, similar to in *Daniel*, Virgin Islands law does not provide for the licensing of imitation firearms. Applying the same reasoning used in *Daniel*, we cannot "construe the clause 'unless otherwise authorized by law' . . . as meaning 'unless possessing a license to possess [an imitation firearm].'" *Daniel*, 518 F.3d at 208. The question is then whether evidence that the defendant was unlicensed to possess a firearm is evidence,

9

beyond a reasonable doubt, that he was unauthorized to possess an imitation firearm.

In *Daniel*, the defendant was convicted of unauthorized possession of ammunition. Virgin Islands law did not provide for any procedure for licensing ammunition possession. The government argued that proof that the defendant did not have a firearms license was proof that the ammunition possession was unauthorized because dealers were prohibited from selling ammunition to anyone without a firearms license. *Daniel* 518 F.3d at 208. Although acknowledging that ammunition is generally possessed for use in a firearm, we were "loath to construe these provisions to create an offense relating to unlawful possession of ammunition" because no statutory provision made "lawful possession of ammunition contingent on having a firearms license." *Id.* at 208-209. Further, the provision prohibiting dealers from selling ammunition to persons without firearms licenses restricted only the conduct of dealers, not an individual's possession. *Id.*

In accord with *Daniel*, absence of a license to possess a firearm cannot be proof beyond a reasonable doubt that the defendant was unauthorized to possess an imitation firearm. In this case, there is nothing that regulates an imitation firearm at all, let alone with regard to an individual's possession. And nothing links authorization to possess a firearm to authorization to possess an imitation. The breadth of the term "imitation," which is undefined in the statute, makes drawing a link nearly impossible. Since the only proof the government offers that the defendant was unauthorized to possess the imitation is the absence of a license to possess a

10

firearm, the government has failed to meet its burden of proof.

Because I believe that the government failed to prove a requisite element of 14 V.I.C. § 2253(a), I respectfully dissent from the Majority's judgment insofar as it holds otherwise. Accordingly, I would reverse the District Court's July 22, 2011 judgment.