# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 21, 2009          Decided June 26, 2009

No. 08-1152

LANDSTAR EXPRESS AMERICA, INC. AND LANDSTAR GLOBAL
LOGISTICS, INC.,
PETITIONERS

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF
AMERICA,
RESPONDENTS

On Petition for Review of an Order
of the Federal Maritime Commission

*David K. Monroe* argued the cause for petitioners. With
him on the briefs was *David P. Street*.

*Benjamin K. Trogdon*, Attorney, Federal Maritime
Commission, argued the cause for respondent. With him on
the brief were *Deborah A. Garza*, Acting Assistant Attorney
General, U.S. Department of Justice, *John J. Powers, III* and
*Robert J. Wiggers*, Attorneys, and *Peter J. King*, General
Counsel, Federal Maritime Commission.

Before: GINSBURG, HENDERSON, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This case illustrates the basic rule-of-law maxim that statutory text binds federal agencies. Ocean Transportation Intermediaries help arrange shipping for U.S. companies. Federal law requires Ocean Transportation Intermediaries to obtain licenses from the Federal Maritime Commission. On occasion, Ocean Transportation Intermediaries will use agents – who are not themselves Ocean Transportation Intermediaries – to assist them in some of their myriad activities, such as packing or trucking services. In the order at issue here, the Federal Maritime Commission required agents of Ocean Transportation Intermediaries to obtain licenses. The Commission's decision requiring agent licensing may or may not be wise policy. But the fundamental problem, as Federal Maritime Commissioner Dye explained in her persuasive dissenting opinion, is that the Commission does not possess statutory authority to require agents of Ocean Transportation Intermediaries who are not themselves Ocean Transportation Intermediaries to obtain licenses. We therefore grant Landstar's petition for review, vacate the Commission's declaratory order, and remand to the Commission.

I

A

Under the Shipping Act of 1984, 46 U.S.C. §§ 40101 *et seq.*, the Federal Maritime Commission regulates ocean shipping between the United States and foreign countries.

Section 19 of the Act mandates that all Ocean Transportation Intermediaries be licensed by the Commission:

> A person in the United States *may not act as an ocean transportation intermediary unless the person holds an ocean transportation intermediary's license* issued by the Federal Maritime Commission. The Commission shall issue a license to a person that the Commission determines to be qualified by experience and character to act as an ocean transportation intermediary.

*Id*. § 40901(a) (emphasis added).

Ocean Transportation Intermediaries are defined as either Ocean Freight Forwarders (OFFs) or Non-Vessel-Operating Common Carriers (NVOCCs). *Id.* § 40102(19). Both OFFs and NVOCCs are intermediaries between (i) shippers, who seek to export cargo, and (ii) ocean carriers, who physically carry the cargo on their vessels. *See NLRB v. Int'l Longshoremen's Ass'n*, 447 U.S. 490, 496 n.8 (1980) (NVOCCs); *Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc.* (*NCBFAA*) *v. United States*, 883 F.2d 93, 94-95 (D.C. Cir. 1989) (OFFs).

An Ocean Freight Forwarder is "a person that . . . dispatches shipments from the United States via a common carrier and books or otherwise arranges space for those shipments on behalf of shippers," and "processes the documentation or performs related activities incident to those shipments." 46 U.S.C. § 40102(18). In practice, that typically means that the OFF "secures cargo space with a shipping line (books the cargo), coordinates the movement of cargo to shipside, arranges for the payment of ocean freight charges," and provides other "accessorial services . . . such as arranging insurance, trucking, and warehousing." *NCBFAA*,

883 F.2d at 95. OFFs receive compensation from both the shipper and the carrier. *Id.*

A Non-Vessel-Operating Common Carrier, meanwhile, is "a common carrier that . . . does not operate the vessels by which the ocean transportation is provided" and "is a shipper in its relationship with [a vessel-operating] common carrier." 46 U.S.C. § 40102(16); *see also id.* § 40102(17). Although NVOCCs usually do not own or operate vessels to actually carry the cargo, they lease facilities and services from other firms – making them the "common carrier[s]" responsible for transportation of the cargo from origin to destination. *See NCBFAA*, 883 F.2d at 101. Most NVOCCs consolidate small parcels from multiple shippers bound for the same destination and arrange for them to be shipped as a single, large, sealed container under one bill of lading. *See id.* Upon arrival, NVOCCs arrange for the container to be broken down and for each parcel to be distributed to each customer. Thus, unlike an OFF, the NVOCC issues its own bill of lading to each shipper, and the vessel-operating common carrier issues a bill of lading to each NVOCC. *See Fireman's Fund Am. Ins. Cos. v. Puerto Rican Forwarding Co.*, 492 F.2d 1294, 1295 (1st Cir. 1974). Unlike OFFs, NVOCCs receive compensation only from the shipper. *See NCBFAA*, 883 F.2d at 101.

Under § 19 of the Act, all persons or entities acting as Ocean Transportation Intermediaries must obtain licenses from the Federal Maritime Commission. Thus, all persons or entities acting as OFFs must obtain OFF licenses, and all persons or entities acting as NVOCCs must obtain NVOCC licenses.

In recent decades, the Ocean Transportation Intermediary industry has expanded and modernized. OFFs and NVOCCs have increasingly forged agency arrangements with certain

third parties to enhance their operational efficiencies. For example, NVOCCs rely on agents such as warehouses, truckers, container lessors, steamships, and receivers – especially in foreign countries where it may be difficult to hire employees or open branch offices.

B

Petitioner Landstar is a licensed NVOCC. In January 2006, Landstar requested an opinion letter from the Federal Maritime Commission's General Counsel on the lawfulness of using unlicensed agents to assist with certain aspects of its Ocean Transportation Intermediary services. The General Counsel responded that a licensed NVOCC could lawfully use unlicensed agents to perform NVOCC services. "As agents, acting on behalf of [Landstar], they would not be subject to the licensing requirements of section 19 of the Shipping Act" because they would not "be holding out in their own right to provide NVOCC services." Letter from FMC General Counsel to Landstar (Jan. 26, 2006), Joint Appendix 1, 2-3.

In August 2006, Team Ocean Services, Inc., an Ocean Transportation Intermediary licensed as both an OFF and NVOCC, petitioned the Commission for a declaratory order that would reaffirm the conclusions of the FMC's General Counsel. Team Ocean requested that the Commission dispel any regulatory uncertainty so it could move forward with plans to incorporate unlicensed agents – providing OFF and NVOCC services on its behalf – into its business model. In the Team Ocean proceeding, Landstar (the petitioner in this case) filed comments advancing the position that agents providing NVOCC services are not subject to the licensing requirement of § 19.

In a 3-1 decision, the Commission ruled that the use of unlicensed agents was unlawful because an agent that provides Ocean Transportation Intermediary services "act[s] as an ocean transportation intermediary" within the meaning of § 19 and is therefore subject to the licensing requirement. *In re Lawfulness of Unlicensed Persons Acting as Agents for Licensed Ocean Transportation Intermediaries – Petition for Declaratory Order*, at 8, No. 06-08 (Fed. Mar. Comm'n Feb. 15, 2008) (Order). The Commission did not rely on the text of the Shipping Act. The Commission instead relied on the "remedial purposes" of the Act, which the Commission said were to address "complaints concerning NVOCC practices" by protecting the shipping public from unqualified or unscrupulous service providers. *Id.* at 10-11 (internal quotation marks omitted). The Commission concluded that sanctioning the use of unlicensed agents would undermine the "spirit and basic policy" behind § 19 and render the statute "absurd." *Id.* at 9-10 (internal quotation marks omitted).

In dissent, Commissioner Dye primarily argued that the text of § 19 of the Shipping Act does not permit licensing of agents who only provide NVOCC services on behalf of a licensed NVOCC principal. Commissioner Dye explained that an agent working on behalf of a disclosed, licensed NVOCC does not "act as an ocean transportation intermediary" because by definition it does not operate as an NVOCC or common carrier: "Since such NVOCC agents would be acting on behalf of a licensed principal without 'holding out' and without 'assuming responsibility,' section 19 of the Shipping Act would not require them to obtain separate OTI licenses." *Id.* at 26, 30 (Dye, Commissioner, dissenting). Recognizing that "many licensed NVOCCs currently use unlicensed agents for different aspects of their businesses," she warned that the "policy adopted by the majority would stifle this business innovation." *Id.* at 31.

Commissioner Dye thus favored issuing a declaratory order stating that licensed NVOCCs may use unlicensed agents as long as the agent does not hold out to provide Ocean Transportation Intermediary services in its own right.

Landstar petitions for review of the Commission's declaratory order to the extent it applies to NVOCCs and their use of agents to provide NVOCC services. Landstar argues that the Commission's order contravenes the text of the statute. *Cf. Chevron USA, Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).

II

The plain language of § 19 of the Shipping Act requires Ocean Transportation Intermediaries to obtain licenses: "A person in the United States may not act as an ocean transportation intermediary unless the person holds an ocean transportation intermediary's license issued by the Federal Maritime Commission." 46 U.S.C. § 40901(a).

The statutory question here is whether *agents* of Ocean Transportation Intermediaries who are not themselves Ocean Transportation Intermediaries must also obtain licenses from the Commission.

We have previously held that where the Shipping Act includes a precise definition, "the limits of the Commission's jurisdiction to regulate carriers under [the Act] must necessarily depend upon the meaning and interpretation of the [statutory] definition." *Austasia Intermodal Lines, Ltd. v. FMC*, 580 F.2d 642, 644 (D.C. Cir. 1978). In *Austasia*, the relevant Shipping Act provision required "every common carrier" to file certain tariffs with the Commission. *Id.* Because the Commission had imposed tariff filing

requirements on a carrier that did not meet that statutory definition, we explained that the Commission had exceeded its authority. *Id.* at 646.

That basic principle of statutory interpretation also governs this case. Because the Shipping Act defines the term "ocean transportation intermediary" and because the Commission imposed a licensing requirement on agents that do not meet that statutory definition, the Commission exceeded its authority.

A

An Ocean Transportation Intermediary is either an Ocean Freight Forwarder or a Non-Vessel-Operating Common Carrier – that is, an OFF or an NVOCC. 46 U.S.C. § 40102(19). This case involves agents of NVOCCs. In its order, the Commission suggested that agents of NVOCCs fall within the statutory definition of an NVOCC. *See* Order at 8-9 & n.6. That is plainly wrong. An "NVOCC" is a non-vessel-operating *common carrier*. *Id*. § 40102(16). And a "common carrier" under the Act is a person or entity that:

> (i) holds itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation; [and]

> (ii) assumes responsibility for the transportation from the port or point of receipt to the port or point of destination.

*Id.* § 40102(6)(A).

Connecting the statutory dots, a person or entity that provides NVOCC services falls within the ambit of § 19 only

when it "holds itself out to the general public to provide transportation" and "assumes responsibility for the transportation." *Id.*[1]

An agent providing NVOCC services on behalf of a disclosed NVOCC principal possesses neither of those two defining characteristics of an NVOCC. An agent acting on behalf of a disclosed NVOCC principal does not hold *itself* out to the general public to provide transportation because it holds out only *in the name of the NVOCC*, subject to that NVOCC's control. *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 ("the agent shall act on the principal's behalf and subject to the principal's control"); *JSG Trading Corp. v. Dep't of Agric.*, 235 F.3d 608, 616 (D.C. Cir. 2001). An agent of a disclosed principal also does not ordinarily assume responsibility for the transportation of the cargo as the principal bears the burdens of liability. *See* RESTATEMENT (THIRD) OF AGENCY § 6.01 (agent for disclosed principal); *id.* § 7.03 (principal liability); *Judah v. Reiner*, 744 A.2d 1037, 1039-40 (D.C. 2000) (agency relationship prerequisite to respondeat superior).

---

[1] The Commission's case law and rulemakings reinforce the importance of both factors to NVOCC status. *See, e.g.*, *Rose Int'l, Inc. v. Overseas Moving Network Int'l, Ltd.*, 29 S.R.R. 119, 162, 2001 WL 865708 (Fed. Mar. Comm'n June 1, 2001) ("The most essential factor is whether the carrier holds itself out"); Licensing, Fin. Responsibility Requirements, and General Duties for Ocean Transportation Intermediaries, 63 Fed. Reg. 70,710, 70,710 (Dec. 22, 1998) (notice of proposed rulemaking) ("whether he holds himself out to carry goods from whomever offered to the extent of his ability to carry" is essential) (internal quotation marks omitted); *Common Carriers by Water – Status of Express Companies, Truck Lines and Other Non-Vessel Carriers*, 6 F.M.B. 245, 256 (Fed. Mar. Bd. March 2, 1961) ("Actual liability as a common carrier over the entire journey . . . is essential").

Just as the FMC's General Counsel concluded in the initial Landstar opinion letter and as Commissioner Dye explained in her dissent to the Commission's ruling in this case, an agent of an NVOCC by definition is not a "common carrier," and thus not an "NVOCC" as described in the Act.

The Commission justified its extension of § 19's licensing requirement to agents by finding the text of the statute less important than what the Commission said was the statute's broader "spirit and basic policy." Order at 10. In effect, the Commission appealed to this "spirit" to interpret "act as an ocean transportation intermediary" to encompass persons who do *not* act as Ocean Transportation Intermediaries. But agencies cannot distort statutory language in this manner.

In explaining its counterintuitive gloss on the text, the Commission noted that it was "not aware of any legislative history or case law that would indicate Congress intended to distinguish between persons who 'act' as [Ocean Transportation Intermediaries], on the one hand, and persons who provide [Ocean Transportation Intermediary] services on the other." *Id.* at 8. It should go without saying, however, that the absence of disproof in the legislative history hardly constitutes proof. The statute means what it says.

The Commission also stated that agents must be subject to licensing so as to further the "remedial purposes" of § 19. *Id.* at 10. The purpose of § 19, the Commission explained, was to protect the public from unknown or unscrupulous Ocean Transportation Intermediary service providers. If § 19 were not "broadly construed" to encompass agents, this would "eviscerate" and "defeat the statute's clear and evident purpose." *Id.* at 10, 12. As the Supreme Court has repeatedly

explained, however, neither courts nor federal agencies can rewrite a statute's plain text to correspond to its supposed purposes. *See Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 171 (2007) ("statute's remedial purpose cannot compensate for the lack of a statutory basis [in text]"); *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002) ("We will not alter the text in order to satisfy the policy preferences of the Commissioner."). Moreover, even accepting the Commission on its own terms, declining to require the licensing of agents does not "eviscerate" or "defeat" the statute's remedial purposes. As the FMC's General Counsel concluded and as Commissioner Dye explained, common law agency principles provide members of the public with adequate safeguards in their dealings with agents: If an agent breaches a contract or commits a tort, the disclosed NVOCC principal in whose name the agent acts is subject to liability. *See* RESTATEMENT (THIRD) OF AGENCY §§ 6.01, 7.03; 46 C.F.R. § 515.4(b)(2) (Ocean Transportation Intermediaries "strictly responsible for the acts or omissions of any of its . . . agents rendered in connection with the conduct of its business"). Therefore, the Commission's suggestion that the plain reading of the statute's text undermines its purpose rings hollow.

In a similar vein, the Commission said it would be "absurd" to require NVOCCs to be licensed, but to excuse the agents from that licensing requirement. Order at 9. A statutory outcome is absurd if it defies rationality. *See Corley v. United States*, 129 S. Ct. 1558, 1566-68 (2009) ("absurdities of literalism" would render statute "nonsensical and superfluous"); *Barnhart v. Thomas*, 540 U.S. 20, 28 (2003) (agency's statutory interpretation did not create "absurd results" because there was a "plausible reason why Congress" might have intended those results) (internal quotation marks omitted); *see also* John F. Manning, *The Absurdity Doctrine*, 116 HARV. L. REV. 2387, 2390 (2003)

("standard interpretive doctrine . . . defines an 'absurd result' as an outcome so contrary to perceived social values that Congress could not have 'intended' it"). The absurdity doctrine is inapposite here: Exempting agents from § 19 may be debatable policy, but it is hardly irrational. Declining to subject agents to the licensing requirement encourages Ocean Transportation Intermediaries to incorporate agency arrangements into their business models and arguably promotes efficiency and innovation in the Ocean Transportation Intermediary industry. Indeed, the Commission admits there are no "legal or policy reasons to prohibit" licensed Ocean Transportation Intermediaries from contracting with unlicensed vendors to perform trucking and similar services. Order at 19-20.

In sum, the plain language of § 19's licensing requirement does not extend to agents of Ocean Transportation Intermediaries.

B

In this Court, no doubt recognizing the problem of squaring the Commission's order (which primarily addressed whether agents of NVOCCs must be licensed) with the statutory text, the attorneys for the Commission have radically shifted away from the rationale employed by the Commission. The Commission's attorneys now argue that agents of Non-Vessel-Operating Common Carriers need only obtain Ocean Freight Forwarder licenses, not Non-Vessel-Operating Common Carrier licenses. We appreciate the legal creativity. But this new argument is not only contrary to the Commission's actual rationale – meaning we cannot sustain the order on that basis, *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) – but also is rather nonsensical.

A short explanation suffices to reveal the flaws of this theory. Section 19 requires that the person or entity acting as an Ocean Transportation Intermediary obtain "an ocean transportation intermediary's license." 46 U.S.C. § 40901(a). An Ocean Transportation Intermediary is defined as an OFF or NVOCC. *Id.* § 40102(19). Accordingly, an "ocean transportation intermediary's license" is an OFF license or an NVOCC license. Because OFF status does not require common carrier status, the Commission's attorneys now argue that agents of NVOCCs actually perform OFF services and therefore must obtain OFF licenses instead of NVOCC licenses. But the Commission has no authority to require agents of OFFs who are not themselves OFFs to obtain OFF licenses, just as it has no authority to require agents of NVOCCs who are not themselves NVOCCs to obtain NVOCC licenses. And it would be doubly illogical to require agents of NVOCCs to obtain OFF licenses.

What is more, the effort by the Commission's attorneys to blend OFFs and NVOCCs into equivalents flies in the face of both the Shipping Act and the Commission's own regulations. OFF licenses and NVOCC licenses are not interchangeable. The Act defines the terms in separate provisions of the Act, with different descriptions of their respective services. *See id.* § 40102(18) (defining OFF); *id.* § 40102(16) (defining NVOCC). The Commission's regulations similarly differentiate between OFFs and NVOCCs, setting forth distinct lists of their representative functions – specifying 13 OFF duties and 8 NVOCC duties with no overlap in wording. *See* 46 C.F.R. § 515.2(o)(1) (defining OFF); *id.* § 515.2(o)(2) (defining NVOCC); *see also id.* § 515.2(i) (listing OFF duties); *id.* § 515.2(l) (listing NVOCC duties); *id.* § 515.32 (setting forth "Freight forwarder duties"). We therefore reject the agency counsel's invitation at oral argument to find "a distinction without a real

difference" in a statutory and regulatory scheme that plainly envisions a distinction with a difference. Tr. of Oral Arg. at 30; *cf. Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*, 883 F.2d 93, 102 (D.C. Cir. 1989) (affirming FMC's position that an NVOCC that provides some OFF services "does not become a freight forwarder as well" as "it remains a common carrier").

\* \* \*

The Shipping Act imposes licensing on OFFs and NVOCCs, and on OFFs and NVOCCs alone. Agents providing NVOCC services for licensed NVOCC principals are not NVOCCs (or OFFs) solely by virtue of being agents of NVOCCs. They therefore fall outside the coverage of the statute's licensing requirement. The Commission lacks authority to compel those agents to obtain licenses.

The Commission's interpretation of § 19 of the Shipping Act runs contrary to the plain language of that provision. But even if the plain language of § 19 were ambiguous on the question whether agents are subject to the Commission's licensing authority, the Commission's extension of the requirement to agents is arbitrary and capricious and constitutes an unreasonable interpretation and application of the statute. *See generally Chevron USA, Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

If the Commission is correct that sound policy requires licensing agents of Ocean Transportation Intermediaries, the Commission no doubt will convince Congress to update the statutory scheme to that effect. But the agency cannot rewrite a statute just to serve a perceived statutory "spirit." We therefore grant Landstar's petition for review, vacate the declaratory order, and remand to the Commission.

*So ordered.*