# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 6, 2012

No. 12-60333
Summary Calendar

Lyle W. Cayce
Clerk

MEMORIAL HOSPITAL AT GULFPORT; FORREST GENERAL HOSPITAL; SOUTH CENTRAL REGIONAL MEDICAL CENTER; SOUTHWEST MISSISSIPPI REGIONAL MEDICAL CENTER,

Plaintiffs-Appellants

v.

KATHLEEN SEBELIUS, in her official capacity as Secretary of the United States Department of Health and Human Services; DONALD BERWICK, in his official capacity as Administrator of the Centers for Medicare and Medicaid Services,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:11-CV-15

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiffs, four acute care hospitals, sued the Secretary of Health and Human Services seeking recalculation of their reimbursable Medicare costs

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60333

under 42 U.S.C. § 1395ww(d)(5)(F)(i)(I), among other relief.  The district court granted summary judgment to defendants.  For the reasons outlined below, we AFFIRM.

## FACTS AND PROCEEDINGS

Medicare is a federal health insurance program for elderly and disabled patients.  *See* 42 U.S.C. §§ 1395 *et seq*.  Part A of the Medicare statute covers the costs of hospital stays, while Part B covers outpatient care.  *See* 42 U.S.C. §§ 1395c-1395i; 1395j-1395w-5.  Part E provides, among other things, that the federal government will reimburse hospitals for costs incurred in treating Medicare patients.  42 U.S.C. § 1395ww.  The statute also allows for "an additional payment" for hospitals that serve "a significantly disproportionate number of low-income patients."  42 U.S.C. § 1395ww(d)(5)(F)(i).  Whether a hospital qualifies for the extra payment – and the amount of that payment – is determined by calculating the hospital's "disproportionate patient percentage." 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).  That percentage is the sum of two fractions, expressed as percentages:

> (I) the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter, and

> (II) the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

2

No. 12-60333

42 U.S.C. § 1395ww(d)(5)(F)(vi).

In determining a hospital's disproportionate patient percentage, therefore, the statute includes patients who are entitled to Medicare Part A *and* supplemental security income (SSI) benefits,[1] as well as patients who are eligible for Medicaid, but not for Medicare Part A. The plain meaning of the statute does not include patients who qualify for Medicare Part A and Medicaid, but do not qualify for SSI.

Plaintiffs, four acute-care hospitals ("hospitals"), nonetheless included these patients in their cost reports for fiscal years 2004 through 2006. Their fiscal intermediary[2] removed these patient days from the calculations. The hospitals appealed that decision to the Provider Reimbursement Review Board ("Board") pursuant to 42 U.S.C. § 1395oo(a). The Board found that the plain language statute did not allow for the inclusion of non-SSI qualifying Medicare patients in the disproportionate patient percentage calculation. The Board found that it was without the authority to decide the question of whether a literal reading of the statute was legally valid, and granted the hospitals' request for expedited judicial review.

The hospitals filed this action in the district court on January 14, 2011, seeking declaratory and injunctive relief. Both parties filed cross-motions for summary judgment; the district court granted summary judgment to the defendants on June 18, 2012.[3] Following the Supreme Court's two-step test for

---

[1] SSI provides federal assistance for low-income individuals who are aged, blind, or disabled. *See* 42 U.S.C. § 1381 *et seq*.

[2] For the purpose of the Medicare Act, the federal government contracts "fiscal intermediaries," usually private insurers, to process cost reports and determine the amount of reimbursement due to health care providers. 42 U.S.C. §§ 1395h, 1395kk-1; 42 C.F.R. §§ 413.20(b); 421.100-128.

[3] The district court dismissed Donald Berwick from the case on Defendants' motion, pursuant to 42 C.F.R. § 405.1877(a)(2). Plaintiffs did not object to Berwick's dismissal and do not appeal it.

No. 12-60333

judicial review of agency interpretation, the district court found that as Congress had "directly spoken to the precise question at issue," the court was bound by its "unambiguously expressed intent," *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984), that only Medicare Part A patients covered by SSI are included in the disproportionate patient percentage. The district court further found that excluding patients not covered by SSI did not yield a result "so bizarre that Congress could not have intended" it. *See Stiles v. GTE Sw. Inc.*, 128 F,3d 904, 907 (5th Cir. 1997).

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, considering the evidence in the light most favorable to the nonmoving party. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995), "Summary judgment is appropriate when the record reflects that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c), later renumbered as 56(a)).

## DISCUSSION

Under the Supreme Court's rubric in *Chevron*, "[i]f Congress 'has directly spoken to the precise question at issue,' we 'must give effect to [its] unambiguously expressed intent.'" *Texas Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010) (quoting *Chevron*, 467 U.S. at 842-43). Only if the statute is "silent or ambiguous" does a court proceed to consider the agency's interpretation. *Id.*

The hospitals concede that non-SSI qualifying Medicare patients are excluded from "the payment formula as enacted," but argue that excluding these patients runs contrary to legislative history and intent. If "the intent of Congress is clear and unambiguously expressed by the statutory language at issue," that is "the end of [the court's] analysis." *Zuni Public School Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93 (2007). "Courts must presume that a

4

No. 12-60333

legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002).

The hospitals argue that even clearly expressed statutory language is not conclusive where there is "a clearly expressed legislative intent to the contrary." *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993). We agree with the district court, however, that the hospitals have not shown such a clearly expressed intent here. The hospitals cite cases noting that Congress intended the Medicare and Medicaid fractions to reimburse hospitals for the care of "low income" patients. *See Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996); *Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 985-86 (4th Cir. 1996)*; Jewish Hosp., Inc. v. Sec'y of HHS*, 19 F.3d 270, 275 (6th Cir. 1994). But the statute's plain language indicates that Congress chose SSI eligibility, rather than Medicaid eligibility, as the income proxy for the Medicare fraction. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). *See also North Broward Hosp. Dist. v. Shalala*, 172 F.3d 90, 92 (5th Cir. 1999) ("Hospitals typically qualify for an adjustment by showing that they serve a disproportionate number of low-income patients based on the proportion of inpatient days attributable to Medicaid patients and to Medicare patients qualifying for [SSI] benefits."). SSI benefits are conditioned in part on an individual recipient's income, 42 U.S.C. § 1382(a), and SSI recipients are defined as "categorically needy." *Id.* at § 1382(a)(10)(A)(i)(II).[4]

---

[4] The two administrative decisions cited by the hospitals are also unconvincing. In *St. Mary's Hospital-Milwaukee v. BCBSA/National Government Services*, the Board explained the two fractions as follows: "The Medicare low-income proxy, because it uses SSI as the low-income indicator, includes Medicare/Medicaid dual eligible patients. The Medicaid low-income proxy specifically excludes from its calculations patients entitled to Medicare Part A and limits its proxy to Medicaid-only eligible patients." No. 05-1370, 2009 WL 1973499 (June 24, 2009) at *3. The hospitals argue that this decision indicates that the Medicare fraction should

No. 12-60333

The hospitals argue that the statute's legislative history indicates that eligibility for Medicaid, not for SSI, was intended as the income proxy for the Medicare statute.     They cite to legislative history for the House of Representatives' version of the bill, which used Medicaid as the income proxy for the purpose of calculating disproportionate patient percentages.  H.R. Rep. No. 99-241, pt. 1, at 16 (1985).  But the conference agreement adopted the House bill with "modifications," which included the following:

> The percentage of low income patients will be defined as the total number of in inpatient days attributable to Federal Supplemental Security Income beneficiaries divided by the total number of medicare patient days, plus the number of medicaid patient days divided by total patient days.

H.R. Conf. Rep. No. 99-453, at 461 (1985).

The hospitals argue that the phrase "medicaid patient days" indicates that Congress intended for all Medicaid patient days, not just those for non-Medicare qualifying patients, to be included in the calculation.  But the conference report language appears to be a summary of the calculation rather than an exact explanation: as well as failing to specify that the Medicaid fraction includes only non-Medicare patients, the agreement also fails to specify that the Medicare fraction includes only Medicare-eligible SSI beneficiaries.  *Id.*  In light of the

_____

include Medicare/Medicaid dual-eligible patients, but the Board clearly noted that the fraction uses SSI rather than Medicaid as the Medicare income proxy. *Id.*  In addition, the decision states that the Medicare fraction includes patients "entitled to both Medicare Part A and Supplemental Security Income (SSI), *excluding patients receiving State supplementation only.*" *Id.* at *1 (emphasis added).  Similarly, the Administrator of the Health Care Financing Administration, reviewing a Board decision, acknowledged in *Edgewater Medical Center v. BCBSA/BCBS of Illinois* that for the Medicare fraction, "the low-income status of Medicare patients . . . is determined by their entitlement to SSI."  Nos. 2000-D44, 2000-D45, 2000 WL 1146601 (June 19, 2000), at *5.  The Administrator noted that "in contrast," Medicaid eligibility defined low-income status for the Medicaid fraction. *Id.*

6

clear statutory language, we do not assume that these omissions reveal an intent to change the scope of the calculation.

Finally, the hospitals argue that the statute as written "defies rationality . . . by creat[ing] an outcome so contrary to perceived social values that Congress could not have intended it." *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (quoting *Landstar Express Am., Inc. v. Fed. Maritime Comm'n*, 569 F.3d 493, 498-99 (D.C. Cir. 2009)) (internal quotation marks omitted). The hospitals note that all persons who qualify for Medicaid are low-income, even though they may not qualify for SSI. The hospitals question why a person who qualifies for Medicaid is factored into the disproportionate patient percentage at the age of 64, but is no longer included when she turns 65 and qualifies for Medicare. Like the district court, we are sympathetic to the hospitals' argument that this class of patients should be included in the disproportionate share calculation. However, we do not find that using SSI rather than Medicaid as an income proxy for Medicare patients is such a "bizarre" result that Congress could not have intended it. *Stiles v. GTE Sw. Inc.*, 128 F.3d 904, 907 (5th Cir. 1997); *see also Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997) (distinguishing between an "absurd" statutory result, inconsistent with other provisions of the statute or with legislative history, and a result that is "simply personally disagreeable.").

## CONCLUSION

For the above reasons, we AFFIRM the district court's grant of summary judgment in favor of the Secretary of Health and Human Services.