KAVANAUGH, Circuit Judge,
concurring:
Under this Court’s recent precedent in Coalition for Responsible Regulation, Inc. v. EPA this should be an easy case. The primary question presented is whether EPA has statutory authority to issue the Deferral Rule and thereby temporarily exempt biogenic carbon dioxide from the PSD and Title V permitting programs. In my view, the answer is no. This Court has ruled that the statute requires pre-construction and operating permits for stationary sources that emit or have the potential to emit certain specified amounts of an air pollutant, including carbon dioxide. There is zero basis in the text of the Clean Air Act for EPA to distinguish biogenic carbon dioxide from other sources of carbon dioxide that EPA is required (under our precedent) to regulate for purposes of the PSD and Title V permitting programs. See Coalition for Responsible Regulation, Inc. v. EPA 684 F.3d 102, 132-44 (D.C.Cir.2012).
*413 As a policy matter, EPA may have very good reasons to temporarily exempt biogenic carbon dioxide from the PSD and Title V permitting programs. But Congress sets the policy in the statutes it enacts; EPA has discretion to act only within the statutory limits set by Congress. The statute does not give EPA the authority to distinguish a stationary source’s emissions of biogenic carbon dioxide from emissions of other forms of carbon dioxide for purposes of these permitting programs.[1]
EPA cites three administrative law doctrines that, according to EPA, give it authority to grant the temporary exemption. But in addition to the reasons given in Judge Tatel’s opinion for the Court, which I join in full, I would say that none of those doctrines applies in this case for an even more fundamental reason: The doctrines do not trump the fact that EPA simply lacks statutory authority to distinguish biogenic carbon dioxide from other forms of carbon dioxide for purposes of the PSD and Title V permitting programs.
First, EPA relies on the one-step-at-a-time doctrine, which allows an agency to take incremental steps toward achieving a statutory mandate if taking incremental steps is consistent with the statutory text. See Grand Canyon Air Tour Coalition v. FAA, 154 F.3d 455, 477-78 (D.C.Cir.1998) (rule not arbitrary and capricious because it would achieve statutory mandate in conjunction with other proposed rules within a reasonable timeframe). An agency typically invokes that doctrine in response to a claim that an agency is exercising its statutory discretion in an arbitrary and capricious manner.
But EPA has no such statutory discretion here. Under the statute as this Court has interpreted it, EPA must regulate carbon dioxide under the PSD and Title V permitting programs. Coalition for Responsible Regulation, 684 F.3d at 144 (Clean Air Act “requires PSD and Title V permits for major emitters of greenhouse gases”). And there is no basis in the statute for distinguishing biogenic carbon dioxide from other forms of carbon dioxide.
Second, EPA cites the administrative necessity doctrine, which can excuse agency non-compliance with a statute if the agency lacks sufficient funds or resources. See Alabama Power Co. v. Costle, 636 F.2d 323, 359 (D.C.Cir.1979) (shortage of funds, of “time, or of the technical personnel needed to administer a program” grants agency authority “to cope with the administrative impossibility of applying the commands of the substantive statute”). But EPA has the funds and resources to apply the PSD and Title V programs to biogenic carbon dioxide. Indeed, in the Deferral Rule, EPA acknowledged that it has the resources to “apply PSD and Title V to all facilities with biogenic C02 emissions that emit at or above the Tailoring Rule thresholds.” 76 Fed.Reg. 43,490, 43,496 (July 20, 2011).
EPA decided against that option, however, because EPA thought it might be bad policy. Specifically, EPA said that “it is conceivable that as a result of the scientific examination of biogenic C02 emissions, [EPA] could conclude that the net carbon cycle impact for some biomass feedstocks is trivial, negative, or positive.” Id. EPA reached that conclusion because it thinks that regrowth of plant life — and the result *414 ing recapture of carbon dioxide — might “offset” emissions of biogenic carbon dioxide. But the statute forecloses that kind of “offsetting” approach because the statute measures emissions from stationary sources that “emit” (or have the potential to emit) air pollutants. See 42 U.S.C. §§ 7475(a), 7479(1). The statute does not allow EPA to exempt those sources’ emissions of a covered air pollutant just because the effects of those sources’ emissions on the atmosphere might be offset in some other way.
Relatedly, EPA suggests that it has appropriately balanced the costs and benefits of regulating biogenic carbon dioxide under the PSD and Title V programs. But EPA is not permitted to substitute its view of the costs and benefits of regulation for Congress’s view of the costs and benefits of regulation. See Sierra Club v. EPA, 719 F.2d 436, 462 (D.C.Cir.1983) (EPA not permitted to create exemption “based upon its perceptions of the costs and benefits of enforcing the law”); Alabama Power Co., 636 F.2d at 357 (“[Tjhere exists no general administrative power to create exemptions to statutory requirements based upon the agency’s perceptions of costs and benefits.”). Allowing an agency to substitute its own policy choices for Congress’s policy choices in this manner would undermine core separation of powers principles. The Constitution gives Congress the legislative power to set policy in the first instance, and agencies then must act within those statutory boundaries — even if the agency believes it possesses expertise or policy views superior to Congress’s. See Federal Power Commission v. Texaco, 417 U.S. 380, 400, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974) (agencies cannot use administrative necessity “to overturn congressional assumptions embedded into the framework of regulation” by Congress); Natural Resources Defense Council, Inc. v. Costle, 568 F.2d 1369, 1377 (D.C.Cir.1977) (doctrine not a “revisory power” granting agency authority to act “inconsistent with the clear intent of the relevant statute”).
Third, EPA has also invoked the absurd results doctrine. The crux of EPA’s position is that it would be absurd to interpret the Clean Air Act in a way that would require EPA to regulate biogenic carbon dioxide. But with EPA having already applied the PSD and Title V programs to carbon dioxide (and with this Court having agreed with that interpretation of the statute), there is certainly nothing absurd about applying those programs to biogenic carbon dioxide. It is hardly absurd for Congress to tackle the problem of emissions from the smokestack in the first instance. And the fact that an exemption for biogenic carbon dioxide would be better policy (in EPA’s view) does not make it absurd to apply the statute to biogenic carbon dioxide. See Landstar Express America, Inc. v. Federal Maritime Commission, 569 F.3d 493, 498 (D.C.Cir.2009) (“A statutory outcome is absurd if it defies rationality.”). If it would be better overall to exempt biogenic carbon dioxide from these permitting programs, EPA can always recommend that Congress do so.[2]
*415 All of that said, I have mixed feelings about this case. That’s because I believe, contrary to this Circuit’s precedent, that the PSD statute does not cover carbon dioxide, whether biogenic or not. See Coalition for Responsible Regulation, Inc. v. EPA, No. 09-1322 (D.C.Cir.2012) (Kavanaugh, J., dissenting from denial of rehearing en banc). And as I see it, EPA’s decision to temporarily exempt biogenic carbon dioxide from regulation simply highlights the legal problems in applying the PSD program to greenhouse gases, including carbon dioxide, in the first place. To review the bidding: EPA has read the PSD statute broadly to cover not just the NAAQS pollutants but also greenhouse gases, although EPA expressly recognized that such an interpretation would lead to a result that was “so contrary to what Congress had in mind” and “in fact so undermines what Congress attempted to accomplish with the PSD requirements” that “it should be avoided under the ‘absurd results’ doctrine.” 74 Fed.Reg. 55,292, 55,-310 (Oct. 27, 2009). To try to deal with those admittedly absurd results, EPA then has repeatedly re-written the statute— first in the Tailoring Rule and now in the Deferral Rule. But the absurdities and anomalies flowing from EPA’s statutory interpretation just underscore how flawed EPA’s interpretation was from the get-go. EPA could have adopted a narrower interpretation of the PSD statute that would have avoided those absurdities and, to boot, would have been more consistent with the statutory text and structure. What we are left with now is a statute that is a far cry from what Congress intended or enacted. So EPA is necessarily making it up as it goes along. That is not how the administrative process is supposed to work.
In saying that, I do not want to diminish EPA’s vital public objectives in addressing global warming. The task of dealing with global warming is urgent and important at the national and international level. My concern about EPA’s approach does not stem from policy beliefs (courts don’t have the authority or the expertise to assess policy well anyway) but rather from separation of powers principles.
But EPA’s broad interpretation of the statute was upheld by this Court in Coalition for Responsible Regulation. Although I respectfully think the case was wrongly decided on this issue, that’s water over the dam in this Court. We are bound to apply that precedent. Under that case’s interpretation of the governing statute, EPA is required to regulate carbon dioxide under the PSD and Title V permitting programs. There is no statutory basis for exempting biogenic carbon dioxide.

. Under current precedent, for EPA to exempt biogenic carbon dioxide, it presumably would have to tinker with the Endangerment Finding. Unless EPA does so, there is no statutory basis for exempting biogenic carbon dioxide from the PSD and Title V permitting programs.

. To be sure, the Executive may decline to follow a statutory mandate or prohibition applicable to the Executive if the President concludes that it is unconstitutional, unless and until a final Court order says otherwise. But EPA has not claimed that the statutory requirement to apply these permitting programs to biogenic carbon dioxide would be unconstitutional. It is also true that the Executive possesses a significant degree of prosecutorial discretion to decline to initiate criminal or civil enforcement actions against violators of a federal law. But EPA’s decision here is not such a nonenforcement action, and EPA has not claimed otherwise. See Massachusetts v. EPA, 549 U.S. 497, 527-28, 533, 127 S.Ct. *415 1438, 167 L.Ed.2d 248 (2007) (explaining difference between prosecutorial discretion and agency's choice whether to regulate); see generally In re Aiken County, No. 11-1271, slip op. at 2 n. 1 (D.C.Cir.2012) (Kavanaugh, J., concurring) (describing prosecutorial discretion); Seven-Sky v. Holder, 661 F.3d 1, 50 n. 43 (D.C.Cir.2011) (Kavanaugh, J., dissenting) (referring to possibility that a President might exercise prosecutorial discretion not to seek civil penalties against those who fail to comply with health insurance mandate).